Good morning, Your Honors. Attorney Luis Rodriguez Munoz on behalf of the appellant, Ms. Vilma de Caraballo-Caraballo. First off, Your Honor, I would apologize for Attorney Vera. He was scheduled to appear before Your Honors. Unfortunately, he's taken ill and so I've come to substitute him in the arguments today. Your Honors, we represent Ms. Caraballo-Caraballo. We understand that the district court erred in granting the motion for summary judgment on her Title VII claim as well as retaliation. But focusing on the Title VII claim, Your Honor, we understand the error to be that the court in analyzing the facts, we understand, didn't properly examine them in the view of the situation at hand. Ms. Caraballo-Caraballo was an employee who was holding a position in a particular area providing services to electronic equipment and suddenly she is removed from her position despite her supervisor's desire and indication to the upper echelon of the agency that she's perfectly able to do the work and had been doing the work to his satisfaction for several years and then she's substituted by a male colleague. Counsel, is there any document in the record that sets forth the requirements and qualifications for the job that your client was performing? I ask that because the district court focused on what he thought were the, based on the record, the superior qualifications of the individual who first replaced your client. Were those superior qualifications linked in any way to the requirements of, to a document that sets forth the requirements of the job? Typically, Your Honor, in Puerto Rico there are those documents that generally job descriptions or job postings. In this case, there are not, Your Honor. Both of these and the three individuals involved in doing these functions are all correctional officers. Their functions basically are to service the agency at whatever needs arises during the course of the duties that the current administration understands is necessary. Ms. Carvalho was performing these functions, going to the various prisons, checking the radio communication devices, providing repair work for several years. But again, this is not a specific job title. This is not, for example, say a secretary position or a janitorial position where there's a description that delineates all of the qualifications for the posting. So therefore, I think that adds to what we understand is an error by the court. Because if Ms. Carvalho is performing these functions and she's performing these functions to the satisfaction of her supervisor, for them to suddenly decide to remove her in favor of male colleagues without providing a reason for her transfer, we suggest that that shows probable good evidence for a fact there's a Title VII violation. Counselor, can I just follow up on Judge Lopez's question? In the absence of a specific job description for this radio worker repair, etc., was there any testimony at deposition taken as to what the job requirement expectations were, say for instance, from her supervisor? Yes, there was a deposition taken by her direct supervisor. Yes. And I would add, Your Honor, that it was placed in the record a communication from her direct supervisor. Once her first replacement began to do the function, it was clear and evident that he couldn't perform those functions and that he had to require his removal. This supervisor said, look, since we have to get rid of this person, Ms. Carvalho is qualified, can do the job and has been doing the position and he refused to do so, again, favoring another male colleague of hers. But I'm saying, was it correspondence from him? Was it in any way descriptive of the job that she was actually doing? Descriptive in the depositions, it was reviewed with the supervisor, the things that she was doing in that role, and in every instance, his testimony was that she did the job well, that she was performing everything that was required and more. And when this replacement came, it was the total opposite. It was a total mess. So when it turned out that he, Cordero, could not do the job and was, he no longer was doing that job, I guess, was he fired, basically? No, Your Honor, he was simply relocated. Relocated, okay. So then, subsequently, another male takes that job, but was there a gap in time between when Cordero was doing the job and was it Anaya who came in? That's correct, Your Honor. How much time lapsed between those, when Cordero Vega was transferred and Anaya comes on? It was spontaneous, Your Honor, because at the time, Anaya was also performing some of the similar functions because at the request of Cordero, saying that he needed additional help, Mr. Anaya had already begun to do some of these works. So there was no gap in time. But what there is, Your Honor, there is a direct communication from Ms. Caravaglio's supervisor to the agency saying, this is not working out, he's not performing the task, and we have an able-bodied employee who's skilled, can do this work. And again, Your Honor, she's passed over for a male colleague. So those are the evidence that I think that when the district court examined, the court examined it as if she was applying for a new position, which I would gather would be an employee who's in a position, granted the position is that of correctional officer, given functions that she's been performing. And here, one of the strongest witnesses that Ms. Caravaglio announced was her direct supervisor. And at one point, the direct supervisor, despite sending this communication, praising her work and the need to bring her back in, is threatened and told very bluntly to Ms. Caravaglio. And again, so again, Your Honors, I think that this is reflective of a clear Title VII case, as well as retaliation for her request to be treated equally as any other of the male employees. And again, Your Honors, I would respectfully submit that even the court's decision, the court never addresses or because it's never put in the position to explain why was she moved in the first place. No reason has been given to date as to why she was or was required for her to cease doing these functions. And suddenly, this other gentleman come in and take these functions. In fact, Your Honor, Ms. Caravaglio, upon the change of administration, returned to the radio communication area and has been performing those tasks up to recently. So... She returned? Yes, Your Honor, after a change of administration. So she's certainly capable and able to do the work. It's a question of what is the criteria being used to then suddenly move her or change her. And what we submit is that the evidence provided at the summary judgment state reflects that. You're not making... There's no political discrimination claim in this case, is there? No, Your Honor. No, Your Honor, I wouldn't suggest so. When you say change in administration, that sounds like... There was that claim. No, there was no discrimination based on political affiliation. That claim wasn't made in this case? It was not made in the claim. It was not. This was strictly a Title VII claim, not a 1983 claim, Your Honors. Again, but it goes to show the sort of animus that existed at the time because if you have an able-bodied employee, this is exactly what Title VII is designed to do and protect. You have an able-bodied employee who is suddenly, without reason given, because there is still no reason on the record why she was moved, is replaced by a male employee who ultimately demonstrates they could not perform the functions. Not once, but twice. Now the second employee, the record does not reflect that he couldn't do the functions. I have to submit that the record reflects that he was able to perform the functions and would continue to perform the functions. But the fact that the agency cannot provide a reasonable... How do you respond to the argument that in the opposition to summary judgment, you conceded that there was a requirement to show that the person who replaced her was not more qualified? Whether or not that's a law, you accepted that as your burden? Well, Your Honor, what I submit is that that would be the burden. We understand and we argue that that would be the burden if the position was one whereby it was a new application. You accepted that in your Your Honor, I would argue that it has not been waived because, again, the fact that this person does have qualifications more than Ms. Carballo, that's an unrefutable fact. So let me just ask you one question about that. And this goes back to Judge Lopez's first point. How would we know that if we don't know what the qualifications are? I'm asking this question to help you. No, I understand. Okay. The problem is, Your Honor, because there is no job description, since there is no job description before the district court, where I find the court error is it simply said, okay, this person has more qualifications, therefore... But why are you conceding that? Well, because, Your Honor, the person does have the training, he does have the certifications, he does have things that... Well, you're saying he has different credentials. There's a difference between credentials and qualifications. Agreed. And, again, my client's qualifications come from her background of actually doing the work for several years. So, again, I concede that position as to the background. We certainly never conceded that she couldn't do the functions whether she was the subject of discrimination, Your Honor. Good morning. May it please the Court, Susana Peña-Harrigan, on behalf of defendants and police. I would like to start by addressing the fact that plaintiffs failed to establish a discriminatory animus under Title VII. I would like to direct the Court's attention to paragraph 23 of the complaint, where plaintiff claims that she was not considered for the radio communication area in 2009 because of political bias. She was told, according to her allegations in the complaint, that she needed to be a proven adept of the NPP, which she wasn't, in order to be able to be Yes, Your Honor. And what happened to that claim? What happened is that the Court dismissed the 1983 claims because there was lack of personal jurisdiction on the individual capacity defendants. And the only thing that remained after the dismissal of the 1983 claims was the Title VII. Actually, aside from that, I would direct the Court's attention to strong allegation against the political issue in the agency. She was placed, and he's correct, she was placed back in the radio communication area after a change in administration in 2013. I would also have to say that she was not replaced. She was transferred from the Guaynabo office back to the intake center after the Guaynabo office was closed. She never made a formal request or she never formally communicated her desire to be placed in the radio communication area once she was back in Bayamón until after she was transferred. There was already someone in Bayamón, Cordero, who was assigned to perform the duties, his duties of correctional officer in Bayamón since January 2009 before she was transferred. Therefore, there was already someone there assigned. And also, I would have to add that she was performing, according to the complaint also, she was performing since 1994 to 2003, she was assigned to the radio communication area. Counsel, these moves back and forth are a little confusing, but nevertheless, the district court did make a finding that she had suffered an adverse employment effect by, excuse me, because the duties that she had been performing were taken from her and somebody else began to perform them. I gather you do not accept the district court's finding that there was such an adverse employment effect? It was our argument that there is no evidence in the record that a correctional officer had to be assigned to a specific job attached to the radio communication area. In fact, in her deposition, she related the times that she was transferred since 1994 to perform different duties and there was never an issue with the rotating shifts and she agreed to be transferred to the commissary. And she performed duties in the inmate purchases, so there is no evidence showing that a correctional officer had to be assigned to a specific job attached to the radio communication area. It is an area, it is not a position. We are talking about an area where a correctional officer could work, but it is not a position. So it is our contention that she was not replaced. She was transferred. Well, transfers can be considered adverse employment. It could be depending on the situation, however. She had been transferred before and she was still performing the duties of her position. There is no evidence that she was not performing duties of her position. No evidence whatsoever. Also, Cordero and Planko. But because she had been transferred before, does it mean that this particular transfer could not be an adverse employment action? I agree, Your Honor. However, there is no evidence of the fact that she was not assigned to perform duties of her position. Her salary remained the same. Her fringe benefits remained the same, and she kept her position of correctional officer one. And she had been transferred before with no... But if there is a substantial difference in the quality of the work that she is performing, that can be an adverse employment action. Well, Your Honor, if she... As soon as the nature of her complaint. Yeah, Your Honor. The problem is that she has no evidence showing that the reassignment of duties when she was transferred, because the Guantanamo office was closed. She had to be transferred. The Guantanamo office is closed. So when did Cordero come into the picture? It's a management decision. When did Cordero come into the picture? January of 2009. And she was transferred in March of 2009. And she did not make a formal communication. So was Cordero given that slot that she was holding before she was transferred? Yes. There was already an employee, Cordero, who was already assigned to perform the duties at the radio communication area in January of 2009. And I direct the Court's attention to a statement of a material fact in docket 44, paragraph 27, where we state that he was there since January 2009. So when they closed that office, where did he go? No, he was in Guantanamo. They closed the Guantanamo office where Plaintiff was. And that's when Plaintiff... Wasn't she transferred in part because Cordero was now performing tasks that she had been performing? So she became superfluous at the Guantanamo facility, so she's transferred to Guantanamo. And she says that those changes in responsibility, and I thought the transfer itself took an emotional toll on her, affected her future employment prospects. Those aren't her claims, are they not? Sort of. There's no evidence of that, Your Honor. The problem is that she was not transferred to Guantanamo. She was transferred out of Guantanamo into Bayamón. Cordero was in Bayamón since January 2009, assigned to perform his duties in the radio communication area. Therefore, the reason she was assigned back to Bayamón, indeed, she was in the Bayamón Intake Center before she was sent to Guantanamo. She was sent to the Bayamón Intake Center in 2007 when the Rio Piedras Correctional Institution closed. From the Bayamón Correctional Institution, she was transferred to Guantanamo to continue performing the duties in the radio communication area. And in 2009, March of 2009, she received a letter telling her that she was going to be transferred back to the Bayamón Correctional Institution Intake Center. And when she was asked in the deposition what happened with the Guantanamo office, she answered that the Guantanamo office was closed. Therefore, she wasn't going out or performing in the RCA radio communication area. It's an area, it's not a position. And she was transferred back to Bayamón. And there was already an employee in Bayamón since January 2009, Cordero, assigned to perform the duties in the radio communication area. So then when she was transferred back to Bayamón, there was a surplus in employees who should have been assigned to do that, which is why they didn't need her? They didn't need her. There was already a person in there. However, she requested to be considered to be assigned there. But it was after. It was after she was transferred, and there was no need for her. And the fact that Anaya was brought to replace Cordero, not to replace Plaintiff, and also Plaintiff focused her arguments as to Cordero being similarly situated to her, but she never made that argument as to Anaya. And furthermore, I would have to redirect the Court's attention back to paragraph 23 of the complaint. She was very specific, paragraph 20 and paragraph 23, where she said that she was not considered due to political reasons. And, in fact, I don't know if the Court wants me to move on to the working, the hostile work environment, but she. Let me ask you one more question about this. What I take is her disparate treatment claim. Yes. Cordero is still there when she returns, is that correct, to Bayoumon? Yes, Cordero was there. Then he's not up to the job, so he is transferred. At that point, Sepulveda, her supervisor, says, well, the appellant can do that work. She should be allowed to do work she had been doing before Cordero took on those responsibilities. But that request from her supervisor is not granted, and then that's when Anaya is given those responsibilities. That's correct, Your Honor. So there are two instances where men are chosen to perform work that she had been doing, and she has never given an explanation as to why those decisions were made. Isn't that correct? Well, Sepulveda was told that the decision was made and that there was someone else for Anaya would take over. Anaya had been working with Cordero in the radio communication area for a couple of months before Cordero was removed from the area. And also, I would have to tell the court, I would have to redirect the court's attention to the fact that she never made or focused an argument as to Anaya. I would have to say that she never amended the complaint to remove the fact that she herself states in the complaint that she was given a reason according to the complaint. The reason was political. Sepulveda was never given a reason or there was never a reason set forth that would be related to plaintiff being or related to plaintiff being a member of a protected class. There is nothing tying the placing of Cordero in the position or the replacement of Cordero with Anaya with an activity protected under Title VII. So that would be my reasoning. Also, plaintiff failed to make the argument as to similarly situated regarding Anaya. That argument is never made. There's no argument. I thought there was evidence in the record. I can't remember exactly what form it took, and this would be important, but evidence in the record that at least Sepulveda understood that there were sentiments that a woman should not have these jobs. Is there anything in the record to that effect? No, Your Honor. I believe that what the court is trying to get at would be a statement that plaintiff made, a statement of additional fact 69 regarding someone else saying that he didn't want a model in the commissary, not in the radio communication area. This is in another area. And the court rejected that statement of additional fact because it was not related to plaintiff or the person who was making the statement plaintiff. It was a statement made to plaintiff by someone who heard it from someone else. So the court rejected the argument as an admissible double hearsay. So was this the double hearsay ruling? Yes, that's correct, Your Honor. So the court felt that was not in the form of admissible evidence and did not consider it. Is that correct? That's correct. And I should add that that statement, 68 and 69 of additional facts, was brought in support of her retaliation claim. And I direct the court's attention to the record and to the reply also. And the court, the statements were not related to the relevant question of retaliation. In other words, the statement did not address whether she engaged in a protected activity. But she said that that statement was made with respect to her position in the commissary and by her own inmate purchases. How long had she been in that position? She was offered the position in 2011. I believe it was August because she had an issue that she didn't want to be in rotating shifts. And she was offered a steady shift in the commissary. And I direct the court's attention again to the complaint. Plaintiff stated that the reason... I just want to know when she worked in inmate purchases. I thought she was there from 2009 to 2011. No. She was in the inmate intake center from 2009 to 2011. But in 2011, she was offered, in order to alleviate her situation, she was offered to transfer to the commissary. Okay. Because she had an issue with the shifts. And that's when she alleges, and in the complaint it's really clear, that there was a pattern of harassment. That issue was brought us to the pattern of harassment. And that it was an issue of harassment because... Let me ask the real question that I have. Was she in that position when the statement was made, the alleged statement, that they didn't want a female or a model in the commissary? She never alleged or she never stated the time frame when that statement was made. It's not in the record, Your Honor. It's not. And I should suggest also the fact that she alleged that the reason that she suffered harassment in the commissary, and she had to be taken out in 2012, was because she was a delegate of the union and there was people thought that it was an inconsistency and there was reasons for political reasons too. All right. Thank you.